J-S15043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARIF HOOKER | : | |
| | : | |
| Appellant | : | No. 1388 EDA 2021 |

Appeal from the PCRA Order Entered June 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001279-2007

BEFORE: NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 5, 2022**

Sharif Hooker ("Hooker") appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The factual background of this appeal arises from the 2006 robbery of Curtis Williams, Jr. ("Williams") and the attempts to shoot Williams that injured two bystanders, Carin Georigi ("Georigi") and Malika Huff ("Huff"). The same night as the robbery and shooting, Williams gave a written and signed statement to detectives.[2] In his statement, Williams explained that

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] A detective contemporaneously transcribed Williams's statement, and Williams signed each page of his statement. **See** N.T., 3/19/08, at 222; N.T., 3/18/08, at 79. At trial, the Commonwealth presented Williams's statement to detectives as substantive evidence. **See** N.T., 3/24/08, at 136-37 (trial court's instruction to the jury that it could consider Williams's prior inconsistent statement for the truth of the matters asserted in that
*(Footnote Continued Next Page)*

Hooker and Aaron Briddell ("Briddell") entered his Ford Expedition, drove him around Philadelphia, hit him on the head with their guns, and took money from him. *See* N.T., 3/18/08, at 80; *see also* N.T., 3/19/08, at 228-29. Williams related that, at one point, two of Hooker's friends approached the car and stated that Hooker and Briddell should just kill him because they already hit him. *See* N.T., 3/19/08, at 229. At some point, a light-skinned black male also got into the car. *See id*. at 238. Later, they parked at 73rd and Garman Streets, where Williams's sister owned a home that she rented to "Geese," who was later identified at trial as Augustus Victor ("Victor"). *See* N.T., 3/19/08, at 20-22, 91, 229. While parked, Williams saw Victor and called out to him from the car to get his attention. *See* N.T., 3/18/08, at 80-83. As Victor approached the car, Williams managed to flee to a nearby home. *See id*. at 81. Williams told detectives that Briddell had been driving, Hooker was in the back seat of the car, and Hooker and Briddell both shot at him as he ran into the house. *See* N.T., 3/19/08, at 232, 237.[3] The shots did not hit Williams, but struck Georigi and Huff.

In his preliminary hearing testimony and at trial, Williams gave different versions of the incident that minimized Hooker's participation in the robbery

---

statement); *see also* Pa.R.E. 803.1(1); *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. 1992).

[3] One of the bystanders struck by the gunfire testified at trial that she saw Williams flee from the back passenger side of the car. *See* N.T., 3/19/08, at 111. Williams told detectives that Hooker put his hand out of the car window and fired, while Briddell, who was in the driver's seat, opened the door, stood up, and fired across the car. *See id*. at 235-36.

and exculpated him in the shooting. ***See, e.g.***, N.T., 3/18/08, at 59-72 (Williams's trial testimony that: (1) Briddell barged into the car while Williams and Hooker were talking; (2) Hooker did not appear to know what was going on during the robbery; (3) Hooker asked Briddell to put the gun away and not to shoot; (4) Hooker never hit him during the robbery; (5) Williams only saw one gun in the car; (6) Hooker told Williams to run before driving away; and (7) Williams only saw Briddell holding a gun out of the window of the car). Although Williams had told detectives that Hooker was in the back seat of the car and had a gun, at trial, Williams testified that Hooker was driving the car and was unarmed. ***See id***. at 62-63, 71.[4]

In 2008, a jury found Hooker guilty of three counts of aggravated assault, three counts of attempted murder, and one count each of criminal conspiracy, robbery, and kidnapping. The trial court sentenced Hooker to serve an aggregate term of twenty to forty years of imprisonment. Hooker took a direct appeal in which his counsel petitioned for leave to withdraw and filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). This Court affirmed the judgment of sentence and granted counsel leave to withdraw. ***See Commonwealth v. Hooker***, 34 A.3d 220 (Pa. Super. 2011) (unpublished memorandum) ("***Hooker I***"). Hooker filed a timely PCRA petition, and the PCRA court reinstated Hooker's direct appeal rights.

---

[4] In his preliminary hearing testimony, Williams stated that Hooker had a gun but was an unwilling participant in the robbery. ***See*** N.T., 3/19/08, at 81.

In his reinstated direct appeal, Hooker challenged the sufficiency of the evidence and the legality of his sentence. This Court concluded that there was sufficient evidence to establish Hooker's *mens rea* for the offenses, but we held that the trial court imposed illegal mandatory minimum sentences and failed to merge the aggravated assaults and attempted murders for sentencing purposes. **See Commonwealth v. Hooker**, 170 A.3d 1244, 2017 WL 2261666, at *4-5 (Pa. Super. 2017) (unpublished memorandum) ("**Hooker II**"). On November 9, 2017, the trial court resentenced Hooker to an aggregate term of twenty to forty years of imprisonment. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal in August 2019. **See Commonwealth v. Hooker**, 209 A.3d 1087, 2019 WL 855690 (Pa. Super. 2019) (unpublished memorandum) ("**Hooker III**"), *appeal denied*, 217 A.3d 222 (Pa. 2019).

Hooker timely filed a *pro se* PCRA petition on January 9, 2020. The PCRA court appointed counsel who filed an amended PCRA petition. The Commonwealth moved to dismiss Hooker's petition, and the PCRA court issued a notice of intent to dismiss Hooker's petition. **See** Pa.R.Crim.P. 907. Hooker did not respond to the Rule 907 notice, and the PCRA court dismissed the petition. Hooker timely appealed and complied with the PCRA court's order to

submit a Pa.R.A.P. 1925(b) statement. The PCRA court filed a Rule 1925(a) opinion concluding that Hooker's petition was untimely or meritless.[5]

Hooker raises the following issues that we have reordered for disposition:

1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish violations of [Hooker's] constitutional rights under the United States and Pennsylvania Constitutions.

2. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that the trial court issued an illegal sentence by imposing a sentence greater than the lawful maximum, as the court did not consider the protection of the public, the gravity of the offense as it relates to the victim and the community, the rehabilitative needs of the defendant, and the sentencing guidelines.

3. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that trial counsel was ineffective for refusing to investigate and present evidence of [Hooker's] actual innocence, as well as all available exculpatory evidence.

4. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented of newly discovered evidence that firmly established [Hooker's] actual innocence and would have exonerated him if introduced at trial.

_____

[5] Because Hooker's prior PCRA proceeding resulted in the reinstatement of his direct appeal rights, the instant PCRA proceeding arises from Hooker's timely first PCRA petition. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013) (stating that "when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes") (internal citation omitted). Therefore, the PCRA court erred to the extent it concluded that Hooker's PCRA petition was not timely filed.

5. Whether the PCRA court erred by failing to grant an evidentiary hearing.

Hooker's Brief at 9.

Our standard of review of an order dismissing a PCRA petition is well settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted).

Hooker's first and second issues challenge the sufficiency of the evidence and the trial court's sentence, respectively, and we initially consider whether these issues state proper claims for relief under the PCRA. *See* *Commonwealth v. Price*, 876 A.2d 988, 995 (Pa. Super. 2005) (noting that an appellant in a PCRA appeal cannot assert an error as if he were presenting the claim on direct appeal).

To state a cognizable claim for PCRA relief, a petitioner must plead one of seven bases for relief under 42 Pa.C.S.A. § 9543(a)(2) and establish that the claim has not been previously litigated or waived. *See* 42 Pa.C.S.A. §§ 9543(a)(2) (setting forth grounds for PCRA relief), 9543(a)(3) (requiring the petition to prove the claim has not been previously litigated or waived), 9544 (defining previous litigation and waiver).

In his first issue, Hooker asserts that the evidence was insufficient because the Commonwealth failed to prove that he shot at Williams. This claim could have been raised in Hooker's reinstated direct appeal. Therefore, Hooker's sufficiency challenge is waived and is not cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9544(b) (stating that an issue is waived for the purpose of the PCRA, "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); *see also Commonwealth v. Bond*, 819 A.2d 33, 39 (Pa. 2002). Therefore, Hooker's first issue challenging the sufficiency of the evidence merits no relief.

Hooker's second issue challenges the sentence imposed upon resentencing. He initially asserts that the trial court resentenced him to an illegal sentence that exceeded the lawful maximum. The remainder of his argument, however, focuses on the trial court's failure to consider the sentencing guidelines and the sentencing factors stated in 42 Pa.C.S.A. § 9721(b). Additionally, he challenges the trial court's decision to order some of the sentences to run consecutively.

A challenge to an illegal sentence is cognizable under the PCRA. *See Commonwealth v. Prinkey*, 277 A.3d 554, 560, 568 (Pa. 2022) (holding that a claim of a vindictive sentence was cognizable under the PCRA as a challenge to the legality of sentence). The essence of a legality of sentence claim is "whether, assuming the [petitioner's] claim prevails, the result would be that the trial court lacked authority to impose the sentence at issue." *See*

- 7 -

*id*. at 563. However, if the petitioner does not challenge the existence of authority to impose a sentence and merely disagrees with the trial court's exercise of that authority, then the challenge goes to the discretionary aspects of a sentences. *See id*. at 563-64. Unlike a challenge to an illegal sentence, challenges to the discretionary aspects of a sentence are not cognizable under the PCRA. *See Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa. Super. 2007).

Our review confirms that the trial court, upon resentencing Hooker, imposed sentences well within the statutory maximums for the offenses.[6] Thus, Hooker has not established a viable challenge to the legality of his sentence, and our own review reveals no basis to conclude that the trial court

---

[6] The trial court resentenced Hooker to the following terms of imprisonment:

> Conspiracy to commit murder (count 1): five to ten years;
>
> Aggravated assault against Williams (count 2): five to ten years, consecutive;
>
> Robbery threatening immediate serious bodily injury (count 3): five to ten years concurrent;
>
> Aggravated assault against Huff (count 18): five to ten years, consecutive;
>
> Attempted murder of Georigi (count 26): five to ten years, consecutive.

*See* Order of Sentence, 11/9/17. The grades of all the above-listed charges were first-degree felonies, which carried maximum prison terms of twenty years. *See id*.; *see also* 18 Pa.C.S.A. § 1103(1). We add that the trial court, after this Court's remand in *Hooker II*, did not impose mandatory minimum sentences or sentence separately on the counts subject to merger. In *Hooker III*, this Court also determined that the trial court properly awarded credit for time upon resentencing Hooker.

imposed an illegal sentence. Hooker's remaining arguments that the trial court failed to consider the sentencing guidelines and the relevant section 9721(b) factors when imposing consecutive sentences go to the discretionary aspects of his sentence. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (*en banc*) (discussing an argument based on the trial court's failure to consider section 9721(b) factors as a challenge to the discretionary aspects of a sentence). Such challenges are not cognizable under the PCRA and could have been raised in the trial court in anticipation of his most recent direct appeal.[7] **See Fowler**, 930 A.2d at 593. Thus, the PCRA court did not abuse its discretion in dismissing Hooker's sentencing challenges.[8]

Hooker, in his third issue, argues that trial counsel was ineffective because counsel failed to investigate and call potential witnesses. To establish a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove that: (1) his underlying claim has arguable merit; (2) counsel did not

---

[7] In **Hooker III**, this Court concluded that Hooker had waived challenges to the discretionary aspects of his sentence in his appeal from the resentencing proceeding by failing to object and preserve the issue in a post-sentence motion. **See Hooker III**, 2019 WL 855690, at *2. Notably, Hooker has made no effort to plead or argue a separate claim that his counsel was ineffective for failing to preserve a challenge to the discretionary aspects of his sentence.

[8] We observe that the PCRA court discussed the appropriateness of the sentence following resentencing in its Rule 1925(a) opinion. However, because Hooker's challenges to the discretionary aspects of his sentence as if on direct appeal are not cognizable under the PCRA, we decline to review the PCRA court's discussion.

have a reasonable basis for his act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. ***See Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018); 42 Pa.C.S.A. § 9543(a)(2)(ii). The failure to satisfy any prong of this test is fatal to the claim. ***See Wholaver***, 177 A.3d at 144.

It is well settled that defense counsel has a general duty to undertake reasonable investigations, including interviewing potential witnesses, and that an unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. ***See Commonwealth v. Johnson***, 966 A.2d 523, 535 (Pa. 2009). Further, when claiming that trial counsel failed to call a potential witness, the petitioner must plead and prove that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was prejudicial. ***See id***. at 536.

Hooker asserts that he informed his trial counsel of witnesses who could have corroborated Williams's trial testimony and established his actual innocence. The PCRA court dismissed this claim, in part, because Hooker failed to identify any potential witnesses in his PCRA petition or provide witness certifications.

We agree with the PCRA court that Hooker's general assertions that there were witnesses who could have supported Williams's trial testimony and established actual innocence did not state an ineffective assistance of counsel

claim. In his amended PCRA petition and his argument before this Court, Williams fails to support this claim by identifying any witness, providing a summary of the proposed testimony the witness could offer, or asserting that the witness would be available and willing to testify. Accordingly, Hooker did not establish any of the elements of an ineffectiveness claim based on counsel's failure to investigate or call witnesses at trial, and the PCRA court properly dismissed his claim. **See Johnson**, 966 A.2d at 535.

In his fourth issue, Hooker asserts that he was entitled to a new trial based on after-discovered evidence. An after-discovered evidence claim requires a petitioner to demonstrate that new evidence: "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." **Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018); **see also** 42 Pa.C.S.A. § 9543(a)(2)(vi).

Hooker claims that he presented a viable after-discovered evidence claim based on a "statement summary of Augustus Victor" that he attached to his PCRA petition. The summary states in relevant part:

> Victor will testify that he saw . . . Hooker in the front driver seat of the vehicle and . . . Williams in the front passenger seat. . . . Victor would also testify that he saw . . . Briddell in the back seat along with an unidentified, light skin black male, also in the back seat. . . . Victor would further testify that . . . Hooker did not have a gun and that the gunshots came only from the back seat of the vehicle. . . . Victor will also testify that he was ready and willing to testify to this same information during [Hooker's] trial, but was not contacted or called as [a] witness.

- 11 -

Amended PCRA Petition, 10/29/20, at 11 (unnumbered). Hooker asserts that he obtained this information from Victor "after [he] was convicted at trial" and could not have discovered it earlier because he was in custody before trial.[9]

The PCRA court rejected this issue based on timeliness grounds because Hooker failed to meet his burden of establishing his due diligence in learning about Victor. **See** PCRA Court Opinion, at 12-13. The court thus concluded that "the new facts exception to the PCRA time-bar does not apply." **See id**. at 13.

As noted above, the PCRA court's rejection of this claim based on the PCRA time bar was in error because Hooker's instant PCRA petition constitutes a timely first PCRA proceeding after his reinstated direct appeal. **See Turner**, 73 A.3d at 1286. This Court, however, may affirm the PCRA court's decision on any basis apparent in the record. **See Commonwealth v. Smith**, 194 A.3d 126, 132 (Pa. Super. 2018).

Following our review, we conclude that the record belies Hooker's assertion that he was unaware that Victor had exculpatory information that could not have been discovered before or during trial. The trial transcripts establish that Victor's identity was known by the time of trial. **See** N.T., 3/19/08, at 91. Further, Hooker either knew or should have known that Victor could have information relevant to his defense. Williams identified Victor as

---

[9] We emphasize that Hooker does not assert that Victor was one of the witnesses he asked counsel to investigate or call as a witness at trial in relation to his third issue in this appeal.

"Geese," his sister's tenant, and as the individual who approached the car before Williams fled from it. *See* N.T., 3/18/08, at 81. Thus, Hooker's assertion that he could not have obtained exculpatory information from Victor by the exercise of reasonable diligence lacks any support in the record, and his claim merits no relief.[10]

In his fifth issue, Hooker challenges the dismissal of his amended PCRA petition without an evidentiary hearing. A PCRA petitioner has "no absolute right to an evidentiary hearing on a . . . petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (internal citation omitted); *see also* Pa.R.Crim.P. 907(1).

Hooker argues that the PCRA court erred by failing to afford him "every conceivable legitimate benefit" when reviewing the claims raised in his petition. We have found no basis to conclude that Hooker's amended PCRA petition raised any genuine issues of material fact. Therefore, we agree with the PCRA court that an evidentiary hearing was not required.

Order affirmed.

_____

[10] We add that Hooker only vaguely refers to discovering that Victor had exculpatory information after his conviction. Hooker fails to explain why he did not raise his after-discovered evidence claim in his prior PCRA proceeding or in his reinstated direct appeal, the latter of which occurred more than nine years after his conviction. Therefore, we could also find that Hooker waived his claim pursuant to section 9544(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/05/2022</u>